UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRELL A.,<br><br>                                    Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Commissioner of<br>Social Security,[1]<br><br>                                    Defendant. | Case No.:  3:17-cv-00238-JAH-AHG<br><br>**REPORT AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 13, 14]** |

This matter comes before the Court for a Report and Recommendation ("R&R") on the parties' Cross-Motions for Summary Judgment. ECF Nos. 13, 14. Plaintiff Darrell A. ("Plaintiff") appeals the final decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff brings his appeal pursuant to 42 U.S.C. § 405(g).

---

[1] Martin O'Malley became the Commissioner of the Social Security Administration on December 20, 2023, and is therefore the appropriate Defendant at the time of decision pursuant to 42 U.S.C. § 405(g).

After a thorough review of the parties' submissions, the administrative record, and applicable law, the undersigned recommends that the Court **GRANT** Plaintiff's Motion for Summary Judgment, **DENY** the Commissioner's Cross-Motion for Summary Judgment, and **REMAND** the case for an award of benefits to Plaintiff.

## I.   PROCEDURAL BACKGROUND

Plaintiff filed applications for DIB and SSI on April 1 and 17, 2013, respectively, alleging disability beginning February 1, 2013. *See* Certified Administrative Record ("AR") 30. Plaintiff was born on August 6, 1958. AR 103. He was "closely approaching advanced age" as of the alleged disability onset date, and was "advanced age" as of August 6, 2013. 20 C.F.R. § 404.1563(d), (e).[2] Plaintiff's applications were denied initially on November 6, 2013, and upon reconsideration on February 5, 2014. AR 30. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") and a hearing was held on December 11, 2015. AR 30.

On January 22, 2016, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled and denying Plaintiff's applications for DIB and SSI. AR 39. Plaintiff filed a request for review, but the Appeals Council denied review on December 12, 2016 (AR 1), making the ALJ's decision final and appealable to this Court. *See* 42 U.S.C. § 405(h).

Plaintiff filed this action on February 8, 2017, against then-Commissioner of the Social Security Administration Nancy A. Berryhill. ECF No. 1. Defendant filed the Administrative Record on May 5, 2017. ECF No. 11.

---

[2] The Social Security Administration has promulgated separate but identical regulations governing claims for disability insurance benefits under Title II of the Social Security Act and claims for SSI under Title XVI. For the sake of simplicity, the Court cites to the regulations governing Title II disability insurance benefits at 20 C.F.R. §§ 404.1 *et seq.* throughout this opinion. The parallel regulations governing Plaintiff's SSI claims can be found at 20 C.F.R. §§ 416.101 *et seq.*

## II.  **SUMMARY OF ALJ'S FINDINGS**

The ALJ determined Plaintiff met the insured status requirements of the Social Security Act through June 30, 2016. AR 30. Accordingly, the relevant period is the alleged disability onset date of February 1, 2013, through the last insured date of June 30, 2016. Thereafter, the ALJ performed the five-step sequential evaluation process governing disability claims under the Social Security Act: (1) whether the claimant is involved in substantial gainful activity; (2) whether the claimant has an impairment or combination of impairments that is "severe"; (3) whether the claimant's impairments meet or equal one of the listed impairments;[3] (4) whether the claimant can still perform his past relevant work, given his residual functional capacity, despite his impairment(s); and (5) if the claimant cannot perform past relevant work, whether the claimant can perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4).

At step one of the five-step process, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since his alleged disability onset date of February 1, 2013. AR 32. At step two, the ALJ concluded that Plaintiff had the following severe impairments: HIV, diabetes mellitus, Hepatitis C, major depressive disorder, and schizoaffective disorder. AR 32. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the Listings. AR 34.

The ALJ then determined Plaintiff's residual functional capacity ("RFC") as a precursor to moving to step four. 20 C.F.R. § 404.1520(e). A claimant's RFC is "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1); *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017). The ALJ determined that Plaintiff had the RFC "to perform the full range of unskilled medium exertional work with no working with the general public." AR 34.

---

[3] The criteria for whether a claimant's impairments meet or medically equal one of the listed impairments ("Listings") are found at 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

At step four of the five-step process, the ALJ determined that Plaintiff could perform his relevant past work as a kitchen helper. *See* 20 C.F.R. § 404.1520(f), AR 38. Accordingly, the ALJ determined that Plaintiff was not disabled at any time from the alleged onset date of February 1, 2013, through the date last insured of June 30, 2016, obviating the need to proceed to step five. AR 39.

## III.   **STANDARD OF REVIEW**

The Court reviews the Commissioner's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If so, the Court must affirm the Commissioner's decision. *Id.*

"Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). In evaluating whether the Commissioner's decision is supported by substantial evidence on appeal, the Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony and resolving any ambiguities in the record. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). An ALJ "is entitled to draw inferences logically flowing from the evidence." (internal citation omitted).

The Court also may overturn the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014). However, even if the Court finds error, a court may not reverse an ALJ's decision if the error is harmless, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id.* at 932 (internal quotations

and citation omitted); *see also Burch*, 400 F.3d at 679 ("[a] decision of the ALJ will not be reversed for errors that are harmless").

## IV.   DISCUSSION

Plaintiff contends that the ALJ erred in multiple ways: (1) by making a determination that Plaintiff failed to follow prescribed treatment without following the procedures set forth in Social Security Ruling ("SSR") 82-59; (2) at step two, by failing to consider Plaintiff's physical impairments of osteoarthritis and peripheral neuropathy in combination; (3) at step three, by failing to find that Plaintiff's mental illness meets Listing 12.04; and (4) by not properly evaluating the opinions of Plaintiff's treating physicians. The Court does not address Plaintiff's assertions of error at steps two and three because the Court finds that the ALJ erred with respect to his determination that Plaintiff failed to follow prescribed treatment, and in his evaluation of the medical opinions, and that these errors warrant remand.

### A. The ALJ Erred by Failing to Follow SSR 82-59

Plaintiff argues that the ALJ erred by not complying with SSR 82-59, which sets forth the steps "necessary for a finding of failure to follow prescribed treatment when evaluating disability under titles II and XVI of the Social Security Act and implementing regulations." SSR 82-59, 1982 WL 31384, at *1 (Jan. 1, 1982). SSR 82-59 is the Agency's formal guidance regarding the implementation of the regulations set forth in 20 C.F.R. § 404.1530 (for DIB) and § 416.930 (for SSI), which, at the time of the ALJ's decision, provided as follows:

> (a) What treatment you must follow. In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.

> (b) When you do not follow prescribed treatment. If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits.

> (c) Acceptable reasons for failure to follow prescribed treatment. We will consider your physical, mental, educational, and linguistic limitations

5

(including any lack of facility with the English language) when determining if you have an acceptable reason for failure to follow prescribed treatment.

20 C.F.R. § 404.1530 (2016). Subprovisions (c)(1)-(5) of the statute also contain specific examples of good reasons for not following treatment, such as the treatment being very risky or contrary to the claimant's religion. *Id.* Although the reasons enumerated in the statute are not relevant to this case, SSR 82-59 makes clear that the specific reasons listed in the statute "are not all-inclusive as acceptable justifications for refusing to accept prescribed treatment. A full evaluation must be made in each case to determine whether the individual's reason(s) for failure to follow prescribed treatment is justifiable." SSR 82-59, 1982 WL 31384, at *4.

The policy underlying SSR 82-59 and the related regulations is that a claimant "who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the [SSA] determines can be expected to restore the individual's ability to work, cannot by virtue of such 'failure' be found to be under a disability." *Id.* In other words, the SSA will not award benefits to a claimant with disabling impairments if the claimant's ability to work would be restored by following prescribed treatment, and the claimant has no justifiable cause for failing to do so. Further, if the ALJ bases a finding of non-disability on the claimant's failure to follow prescribed treatment without justifiable cause, the ALJ must follow the "requirements necessary for such a finding," as "explain[ed] in detail" in SSR 82-59. *Id.*

The Commissioner contends that the ALJ was not required to follow the procedures set forth in SSR 82-59 because the ALJ's comments regarding noncompliance were merely one factor in his analysis of the credibility of Plaintiff's testimony. The Court agrees with Plaintiff that the ALJ was required to comply with SSR 82-59, and the ALJ committed reversible error by failing to do so.

**1. The ALJ's determination that Plaintiff failed to follow prescribed treatment was key to his finding of nondisability.**

The Commissioner does not dispute that the ALJ made no attempt to comply with SSR 82-59. Instead, relying on a footnote in *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012), the Commissioner argues that an ALJ is not required to follow the procedures set forth in SSR 82-59 if failure to follow prescribed treatment was "merely a factor in the ALJ's credibility determination." ECF No. 15-1, at 9 (quoting *Molina*, 674 F.3d at 1114 n.6). The Commissioner contends any error in failing to follow SSR 82-59 was harmless, because the ALJ's finding of noncompliance was only one reason for discounting Plaintiff's subjective complaints, and the ALJ provided additional valid reasons for not crediting Plaintiff's testimony.

The Court disagrees with the Commissioner's characterization of the ALJ's decision. A thorough review demonstrates that the ALJ relied on Plaintiff's purported failure to follow prescribed treatment throughout the decision to support his ultimate finding of non-disability. The ALJ relied on a finding of noncompliance in his step two analysis:

> The record establishes diabetes mellitus, Type 2. [Plaintiff] has poor follow through and adherence with the diabetic management protocol. He has been unwilling to consistently track his blood sugar levels. He has been considered to be "recalcitrant" to any hygiene changes and refused insulin. He has neuropathy that is apparently secondary to his poorly controlled diabetes, which is related to non-compliance.

AR 33 (internal citations to AR omitted). The ALJ relied on a finding of noncompliance in his discussion of Plaintiff's testimony regarding his symptoms:

> [T]he record documents noncompliance with the prescribed treatment protocol for his impairments. He has poor follow through and adherence. He has been unwilling to consistently track his blood sugar levels. He has been considered to be "recalcitrant" to any dietary (drinking too much soda against doctor's advice), hygiene changes and refused insulin. In terms of his HIV, he has been documented to have refused medication for years. Recently, he has proclaimed that he has been noncompliant for lifestyle

7

considerations as he has chosen to avoid medications because he is suspicious of them.[4] He has been noncompliant with pain medications but has complained about his neuropathic leg pain. He only recently became more compliant in August 2015 but even in December 2015, he has not followed prescribed treatments by following a diabetic diet.

AR 35 (internal citations to AR omitted). The ALJ relied on a finding of noncompliance in rejecting medical opinions which, if credited, would have supported a finding of disability:

> [T]he postural and environmental limit[ations] [recommended by the State agency medical consultants] are not warranted by the minimal objective findings and the lack of compliance in treatment. . . . [Plaintiff's] HIV and diabetes mellitus impairments, when the claimant is compliant with medication, are being well managed and stable. It is only when [Plaintiff] is willfully noncompliant that he experiences problems such as out of control blood sugar levels associated with his diabetes. AR 37.
>
> ***
>
> Dr. Aldous referenced documentation of noncompliance with medical treatment but indicated that it only referred to the period from 2012 and prior thereto. However, the record, as indicated above, reveals that noncompliance with medical treatment has been an ongoing concern. Indeed, had [Plaintiff] adhered to the prescribed therapy, many of his symptoms would be managed much more effectively – making unskilled medium (but no public contact) work possible. AR 37.
>
> ***
>
> The functional limits endorsed by Dr. Aldous are not warranted by the minimal objective findings from repeated physical examinations of the claimant, especially with his documented noncompliance with the

---

[4] The ALJ incorrectly summarized the record with respect to Plaintiff's HIV treatment. Plaintiff started a medication regimen to address HIV in February 2015, and there is nothing in the record to suggest any noncompliance by Plaintiff with his HIV regimen after February 2015. AR 559, 617 (treatment notes from May 6, 2015 indicating that "HIV is now under control"), 789 (treatment notes from December 2, 2015 stating Plaintiff "is adherent to his HIV and Hep C meds.").

> prescribed treatment for his allegedly disabling impairments. Indeed, as noted above, if he were to be fully compliant with the prescribed therapy, his HIV and diabetes mellitus impairments would be well managed and stable.[5] The only documented hospitalization occurred due to noncompliance that caused elevated blood sugar levels in October 2013. AR 37-38.
>
> ***
>
> [Plaintiff] has been willfully noncompliant with his prescribed medications for his allegedly disabling impairments. Further, even though [Plaintiff] was not compliant with his medications, mental status examinations have been unremarkable other than anxious, irritable, depressed. AR 38 (internal citations to AR omitted).[6]

The ALJ directly connected Plaintiff's purported noncompliance to his assessment of disability:

> What is clear from the record is that if [Plaintiff] had adopted the appropriate attitude and taken responsibility for his health and well-being by adhering to the prescribed treatment protocol for his impairments, his symptoms would have been stabilized and managed such that he could have performed a full range of medium exertional work.

AR 38. The necessary implication of this statement is that Plaintiff ***could not*** perform a full range of medium exertional work at the time of the ALJ's analysis. The same implication arises from the ALJ's statement that "had [Plaintiff] adhered to the prescribed therapy, many of his symptoms would be managed much more effectively – making unskilled medium (but no public contact) work possible." AR 37. Nonetheless, the ALJ determined that Plaintiff had the RFC to perform "the full range of unskilled medium exertional work with no working with the general public"—an RFC that the ALJ repeatedly

---

[5] The record reflects that Plaintiff was first prescribed medication to treat HIV in February 2015, and remained compliant after that date. AR 559, 617, 789.

[6] As discussed further below, the ALJ's characterization of Plaintiff's mental status examinations as "unremarkable" is not correct.

stated would only be possible if Plaintiff adhered to his prescribed treatment protocol—and found no disability based on his step-four determination that a claimant with that RFC would be able to perform Plaintiff's past relevant work.[7] Therefore, the ALJ's finding of non-disability hinged on the ALJ's conclusion that Plaintiff had not adhered to his prescribed treatment.

The ALJ thus made Plaintiff's purported failure to follow prescribed treatment a lynchpin of his decision and did not merely rely on it in assessing Plaintiff's credibility. *Molina* is inapposite. In *Molina*, the Ninth Circuit affirmed an ALJ's denial of disability and SSI to a claimant who suffered from panic and anxiety attacks. 684 F.3d at 1108. The claimant asserted that the ALJ erred by, among other things, relying on the claimant's failure to follow prescribed treatment. *Id.* at 1113. The Ninth Circuit rejected this claim of

---

[7] Although not raised by Plaintiff, there is an additional error that warrants reversal of the ALJ's decision. To support his finding of non-disability at step four, the ALJ states that he "took testimony from the vocational expert regarding the classification of the claimant's past work, and the ability of someone with the claimant's residual functional capacity to perform the exertional and nonexertional requirements of such work, as actually performed." AR 38. This is simply not true. At the hearing, the only hypothetical questions posed by the ALJ assumed a range of light work with additional limitations. AR 91-100. The vocational expert testified that an RFC limited to light work would preclude Plaintiff's past job as a kitchen helper. AR 92. The ALJ never asked the vocational examiner any hypothetical questions based on the RFC of medium work that the ALJ ultimately found, and the vocational examiner never testified that Plaintiff could perform his past relevant work as kitchen helper. There is no record support, whatsoever, for the conclusions reached by the ALJ at step four of his decision. This alone would constitute reversible error. *See Valentine v. Commissioner*, 574 F.3d 685, 690 (9th Cir. 2009) ("The hypothetical an ALJ poses to a vocational expert, which derives from the RFC, must set out *all* the limitations and restrictions of the particular claimant") (internal quotations and citation omitted); *Fritz v. Commissioner*, No. 3:14-CV-00888-MA, 2015 WL 2260635, at *8 (D. Or. May 13, 2015) (holding the ALJ's finding of non-disability at step four was not supported by substantial evidence where "[t]he ALJ did not pose a hypothetical to the VE incorporating all of the limitations of the RFC finding to determine whether plaintiff could perform her past relevant work.").

error because the ALJ did not "expressly" rely on noncompliance, and found that the claimant's "failure to seek treatment (to the extent the ALJ considered it at all) was merely a factor in the ALJ's credibility determination." *Id.* at 1114 n.6.

Here, unlike in *Molina*, the ALJ referenced Plaintiff's alleged noncompliance at nearly every step of the analysis and made it key to his nondisability determination. A more analogous case is *Ibarra v. Commissioner*, 92 F. Supp. 2d 1084 (D. Or. 2000). In *Ibarra*, the court reversed a finding of nondisability and remanded for payment of benefits. *Id.* at 1088. The court found that even though the ALJ did not make an express finding that the plaintiff was otherwise disabled, and "did not expressly purport to deny [the plaintiff] benefits on the ground that she failed to follow prescribed treatment, [] his ultimate finding that claimant is not disabled rest[ed], in significant part, on his expressed perception that her failure to follow a prescribed treatment caused her condition to be worse than it might otherwise be." *Id.* at 1087. The *Ibarra* court found that the ALJ's decision "as a whole leaves no doubt that he premised the denial of benefits solely on his belief that claimant's condition could be ameliorated by sobriety and a prescribed treatment regimen." *Id.* at 1088. In another directly analogous case decided by the Eleventh Circuit Court of Appeals, the court analyzed an ALJ's opinion that stated in pertinent part:

> [T]he medical evidence supports a conclusion that the claimant's diabetes mellitus and high blood pressure are amenable to adequate control on a chemotherapeutic regimen and dietary restrictions as prescribed by her treating physician. The record shows that the claimant's blood pressure becomes uncontrolled at times when she does not take her medication as prescribed, and she also has increased problems relating to her diabetes mellitus due to non-compliance. This non-compliance is clearly demonstrated in the progress notes of her treating physician, as discussed in the evaluation of the medical records.

*Dawkins v. Bowen*, 848 F.2d 1211, 1214 (11th Cir. 1988). As the *Dawkins* court explained, "[t]he problem with this case is that it is unclear from the ALJ's opinion whether or not he based his determination that [the claimant] was not entitled to benefits on [the claimant's] failure to follow prescribed medical treatment." *Id.* at 1213-14. However, because "the

ALJ's conclusion that [the claimant] retains the residual capacity to return to work is inextricably tied to the finding of noncompliance[,]" the court determined that remand was required. *Id.* at 1214. *See also, e.g.*, *Iesha G. v. Commissioner*, No. 1:21-CV-01603-RGV, 2022 WL 16709175, at *12 (N.D. Ga. Sept. 29, 2022) (finding remand required where "a substantial portion of the ALJ's opinion is dedicated to claimant's noncompliance with medical treatment," but it was unclear from the ALJ's opinion whether he based his finding of non-disability on her noncompliance).

Similarly, the ALJ in this case found that if the proper course of treatment had been followed, Plaintiff would not be disabled. This is simply another way of saying that Plaintiff was disabled because he failed to follow the prescribed treatment. The ALJ should therefore have followed the procedures set forth in SSR 82-59.

### 2. The ALJ did not make a proper determination under SSR 82-59 that Plaintiff failed to follow prescribed treatment.

Under SSR 82-59, the ALJ needed to find that four conditions existed to determine that Plaintiff failed to follow prescribed treatment:

1. The evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity (SGA) …; and

2. The impairment has lasted or is expected to last for 12 continuous months from onset of disability or is expected to result in death; and

3. Treatment which is clearly expected to restore capacity to engage in any SGA (or gainful activity, as appropriate) has been prescribed by a treating source; and

4. The evidence of record discloses that there has been refusal to follow prescribed treatment.

SSR 82-59 1982 WL 31384, at *1. In defending the ALJ's decision, the Commissioner only argues that SSR 82-59 does not apply in this case. The Commissioner does not argue that any of these conditions exist.

With respect to the first condition, the ALJ made an implicit finding that Plaintiff's diabetes and neuropathic pain precluded engaging in any SGA by finding that "if [Plaintiff]

had adopted the appropriate attitude and taken responsibility for his health and well-being by adhering to the prescribed treatment protocol for his impairments, his symptoms would have been stabilized and managed such that he ***could have*** performed a full range of medium exertional work." AR 38 (emphasis added).

With respect to the second condition, the record is clear that Plaintiff's impairment lasted for twelve continuous months from onset of disability. Plaintiff alleged a disability onset date of February 1, 2013. AR 30. The medical records indicate Plaintiff was actively treated for diabetes, neuropathic pain, depression, and mental health issues from at least February 1, 2013, through at least January 6, 2016, a duration of more than twelve continuous months. AR 30, 838.

With respect to the third condition, that the treatment is "clearly expected to restore capacity to engage in any SGA," the record does not support the ALJ's bare conclusion that if Plaintiff had only taken his diabetes medication as prescribed, he would be pain-free and able to work. The record instead demonstrates that the prescribed medication not only failed to alleviate Plaintiff's pain; the side effects from the medication were so severe that they would interfere with any ability to work. Plaintiff testified at the hearing that despite taking Gabapentin and Tramadol, he still has neuropathic pain. AR 62. Plaintiff explained that the neuropathic pain is the worst pain he experiences, that his feet hurt "24/7," "even when [he takes] the medication they still hurt," and "it's like the pain never goes away," regardless of whether he is standing or sitting. AR 65; *see also* AR 82 ("it's never better and it hurt[s] all of the time, 24/7, even with the medication."). Plaintiff stated that he is not able to focus when taking Gabapentin because it makes him drowsy and weak. AR 63. His treating physician confirmed that the dose of Gabapentin required to address Plaintiff's pain "causes severe drowsiness." AR 772.

With respect to the fourth condition, the record does not support that Plaintiff refused to follow prescribed treatment. Instead, it reflects significant efforts by Plaintiff to obtain medical care and comply with his medication regimen. At the hearing, Plaintiff explained that he had seen a number of doctors regularly over the past three years, including a doctor

for his physical issues, a psychologist, an endocrinologist, and a liver specialist. AR 52-54. Plaintiff described the medications he was taking at that time:

> I take a lot of medications. … I'm on insulin. I take three times a day, two kinds of insulin, Lantis and Humalog, which I do three times a day. I do the Lantis, two times a day, and I do the Flexi, which is the Humalog, three times a day. And I take the medication. You know, I take all of them. HIV medication, I'm taking two kinds of that, … and I was just recently put on the Hepatitis C medication, [which] is called Harvonia. I've been taking that about a month. … [For diabetes] I take Gabapentin, 800 milligrams, four times a day. I take Cymbalta, which I was just recently put on about two months ago. Cymbalta, Tramadols. Those are two medications I was put on about two months ago, but I have been taking the Gabapentin for like eight months … [f]or my diabetic nerve pains, my neuropathy and my feet.

AR 56-57. Plaintiff also explained he was taking hydrocodone for chronic back pain, cyclobenzopram for muscle spasms, ibuprofen and aspirin for migraine headaches, lisinopril and amlodipine for high blood pressure, metformin, and sleep aids. AR 59-60.

The treatment notes from Plaintiff's doctors confirm that Plaintiff was making efforts to comply with his treatment, albeit imperfectly. The fourth condition set forth above from SSR 82-59, however, requires a showing that a claimant *refused* to follow treatment, which is not the case here. Although treatment notes from March 2013 indicate that Plaintiff was resistant to changing his lifestyle and refused insulin, AR 429, Plaintiff was prescribed insulin for the first time in or about September 2013. AR 534. After that, a number of treatment notes indicate that Plaintiff was testing his blood and taking insulin regularly, although not as often as his doctors would like. AR 493 (12/17/13 - "Managing diabetes by taking blood sugars at least daily"); AR 687, 695 (although Plaintiff stopped taking insulin in January 2014, was back on it by March 2014); AR 609 (3/25/15 – "He checks his sugar morning and night. … He never checks in middle of day."); AR 639 ("He has been engaged in the past couple of years and he is adherent to his medications … medication adherence is NOT on his active problem list and had been moved to inactive list since it was from 2012"); AR 789 ("He is adherent to his HIV and Hep C meds. Is adherent to insulin but needs more education on adjusting for his sugars and diet."); AR

838 ("He is taking same insulin regimen with lantus 50 units BID and short acting pen tid (but only takes 1-2 times per day)). Plaintiff also made efforts to change his diet and reduce his soda intake, although there were also ups and downs in these efforts. AR 609 (3/25/15 – "He started drinking regular soda again over the past few months."); AR 633 (8/5/15 – "He is not drinking soda, watching his diet eating less fast food."); AR 639 ("He is eating a little more fast food and worried he gained wt."). Plaintiff had some problems obtaining his prescriptions in 2013, but his doctor helped him follow through by placing all of his prescriptions on auto fill on the same day of the month. AR 519.

The ALJ never discussed or considered any of the four conditions required in SSR 82-59 for a finding of failure to follow treatment. But an examination of the record does not support a finding of failure to follow treatment with respect to at least the third and fourth conditions.

### 3. The ALJ made no attempt to evaluate whether any failure by Plaintiff to follow prescribed treatment was justifiable under SSR 82-59.

Even if the ALJ had properly assessed that Plaintiff failed to follow prescribed treatment, the ALJ made no attempt to complete a "full evaluation" of any justifications for the failure, as required by SSR 82-59. 1982 WL 31384, at *4. Under the related regulations, the ALJ is required to consider whether the claimant had "a good reason" for failing to follow prescribed treatment, and to consider his "physical, mental, educational, and linguistic limitations" in making that determination. 20 C.F.R. § 404.1530(b)-(c). That evaluation requires that a claimant "be given an opportunity to fully express the specific reason(s) for not following the prescribed treatment, …" and "[t]he record must reflect as clearly and accurately as possible the claimant's … reason(s) for failing to follow the prescribed treatment." 1982 WL 31384, at *2. This requires notice to the claimant and an opportunity to provide additional information:

> Individuals should be asked to describe whether they understand the nature of the treatment and the probable course of the medical condition (prognosis) with and without the treatment prescribed. The individuals should be encouraged to express in their own words why the recommended treatment

has not been followed. They should be made aware that the information supplied will be used in deciding the disability claim and that, because of the requirements of the law, continued failure to follow prescribed treatment without good reason can result in denial or termination of benefits. Particular care should be taken to avoid the impression that SSA is attempting to influence the individual's decision. No statements should be made which could be construed in any way as interference with the doctor-patient relationship.

*Id.* Depending on the information gathered, "it may be necessary to recontact the treating source to substantiate or clarify what the individual was told." *Id.* at *3.

In an analogous case, *Robinson v. Berryhill*, No. 16-cv-02537-JCS, 2018 WL 1366638, at *16 (N.D. Cal. Mar. 16, 2018), the court found that an ALJ erred by failing to comply with SSR 82-59. There, the court noted that the ALJ failed to develop the record regarding whether the plaintiff's poverty and mental health justified any noncompliance. *Id.* At the hearing, "the ALJ only questioned [plaintiff] for approximately three minutes," and "did not ask [plaintiff] any questions about why he sometimes failed to comply with his prescribed treatment." *Id.*

Similarly here, although the ALJ asked Plaintiff about his medications at the hearing, the ALJ never challenged Plaintiff's answers or advised Plaintiff that he considered him to be noncompliant. *E.g.,* AR 56-62. The "Adjudication" section of SSR 82-59 underscores the importance of providing the claimant with notice, an opportunity to respond to any allegation of failure to follow prescribed treatment, and an opportunity to undergo that treatment:

[B]efore a determination is made, the individual … will be informed of this fact and of its effect on eligibility for benefits. The individual will be afforded an opportunity to undergo the prescribed treatment or to show justifiable cause for failing to do so. ***It is very important that the individual fully understand the effects of failure to follow prescribed treatment***.

*Id.* (emphasis added). None of this happened here.

SSR 82-59 provides examples of justifiable failure, including where a person is unable to afford treatment or lacks community resources. SSR 82-59, 1982 WL 31384, at

*4. As already noted, though, these examples "are not all-inclusive." *Id.* In applying SSR 82-59 and the related regulations set forth in §§ 404.1530 and 416.930, the Ninth Circuit and several other Circuit Courts have found that "a disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment." *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). *See also Regennitter v. Commissioner*, 166 F.3d 1294, 1297 (9th Cir. 1999) ("[W]e have proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it"); *Valdez v. Astrue*, No. CV-10-02840-VBK, 2011 WL 672529, at *5 (C.D. Cal. Feb. 14, 2011) (referring to "a whole range of case decisions from both this Circuit and other Circuits which hold that if, because of financial limitations, a claimant does not obtain medical services, that cannot be held against the claimant in the disability evaluation process.").

Here, ample record evidence suggests that Plaintiff's mental health issues and homeless status, which reflects a lack of economic resources, would justify any failure to comply with prescribed treatment. When the ALJ asked Plaintiff if his homeless status made it difficult to take medication, Plaintiff explained that it made it "very difficult," since insulin is supposed to be refrigerated and he had no access to refrigeration. AR 62. But the ALJ never followed up on Plaintiff's response, and his decision does not address Plaintiff's homeless status or his mental health issues in reference to his purported noncompliance. The ALJ ignored numerous citations in the record that indicate that there was a connection between these issues and Plaintiff's ability to follow prescribed treatment. *E.g.,* AR 727 (10/29/14 – "Admits that for past few months he has been taking his insulin usually only once per day because he keeps it in fridge at his aunt's assisted living and he can't get there twice a day. Does try to take it 'most' days."); AR 627 (6/3/15 – "He feels a burning when he gives himself insulin."); AR 639 (9/2/15 – "Sometimes it is hard to [take insulin] due to his homelessness."); AR 789 (12/2/15 – "sometimes it is hard for him to eat anything except fast food since he is homeless and does not have a kitchen. … his med list is already

very long and it is challenging to manage them all with him in his car"); AR 810 (3/19/16 – "his mental illness effects on physical health are significant").

Therefore, even if the ALJ properly found that Plaintiff refused to follow prescribed treatment that, if followed, would permit him to engage in SGA, the ALJ nonetheless erred by not engaging in the requisite analysis of whether Plaintiff's failure to follow the prescribed treatment was justifiable.

**4. The ALJ's failure to comply with SSR 82-59 constitutes reversible error.**

The ALJ's error was not harmless. The ALJ deprived Plaintiff of notice that failure to follow prescribed treatment was being considered as a reason for finding him not disabled, the opportunity to understand the consequences of failure to follow his treatment, the opportunity to fully develop the record as to any such failure, and the opportunity to try to adhere better to his prescribed treatment. All of this had a material impact on the ALJ's finding of nondisability, because the ALJ relied almost entirely on Plaintiff's purported failure to follow prescribed treatment in explaining the basis of his RFC determination, and, ultimately, in finding Plaintiff not disabled. The Court will address the appropriate remedy below.

**B. <u>The ALJ Erred in Evaluating the Opinions of Plaintiff's Treating Physicians</u>**

Plaintiff argues that the ALJ erred in assigning "very little weight" to the medical opinions of his treating physicians, Dr. Aldous and Dr. Arsenault. Under the regulations in effect at the time of Plaintiff's claim,[8] a treating physician's opinion is entitled to greater weight because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). The medical opinion of a claimant's treating physician is given "controlling weight" so long as it is "well-supported by medically acceptable clinical and laboratory

---

[8] Because Plaintiff's claim for benefits was filed in April 2013, the Court applies the treating physician rule as it was set forth in the regulations and interpreted by case law for claims filed before March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017).

3:17-cv-00238-JAH-AHG

diagnostic techniques and is not inconsistent with the other substantial evidence in [the plaintiff's] case record." 20 C.F.R. § 404.1527(c)(2). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes*, 881 F.2d at 751.

Where a treating physician's opinion is controverted by another opinion, it may be rejected only if the ALJ makes findings that set forth specific and legitimate reasons based on substantial evidence in the record. *See Magallanes*, 881 F.2d at 751; *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). To meet this burden, an ALJ must provide "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Magallanes*, 881 F.2d at 751).

**1. Dr. Aldous's Opinion**

Dr. Aldous began treating Plaintiff for his physical conditions in December 2013 and continued treating him on a regular basis through 2015. AR 519, 772. Dr. Aldous opined in November 2015 that Plaintiff had the following functional limitations:

> walk for 2-3 blocks without rest or severe pain; sit for 1 hour at a time and 2 hours total in an 8-hour workday; stand for 20 minutes at a time and stand or walk for less than 2 hours total in an 8-hour workday; needs to shift positions between sit and stand; needs to frequently take unscheduled breaks; lift and carry 10 pounds occasionally and less than 10 pounds frequently; frequently twist; occasionally bend; rarely crouch or climb stairs; never climb ladders; limited to gross and fine manipulation of 50 percent of the time; reach for 20 percent of the time; is expected to be off task for 25 percent of the time; incapable of low stress work; is expected to be absent from work more than four days per month.

AR 37. The ALJ assigned "little weight" to Dr. Aldous's opinion. AR 38. The ALJ's stated reasons for doing so were that: 1) "Dr. Aldous referenced documentation of noncompliance with medical treatment but indicated that it only referred to the period from 2012 and prior thereto;" and 2) "the functional limits endorsed by Dr. Aldous are not warranted by the minimal objective findings from repeated physical examinations of the

claimant, especially with his documented noncompliance with the prescribed treatment for his allegedly disabling impairments." AR 37.

Dr. Aldous's opinion regarding Plaintiff's functional limitations is controverted by other medical opinions in the record.[9] On October 23, 2013, Dr. M. Gleason, a consulting physician who did not examine or treat Plaintiff, opined that Plaintiff should be limited to medium exertional work with some limitations. AR 103-116. On February 4, 2014, Dr. G. Spinka, another consulting physician, affirmed Dr. Gleason's opinion upon reconsideration. AR 133-146. A third non-treating physician, Dr. P. Dao, conducted an examination of Plaintiff on September 24, 2013, and limited Plaintiff to the full range of medium exertional work. AR 37. Because of these controverting opinions, the ALJ had to support his rejection of Dr. Aldous's opinion with specific and legitimate reasons based on substantial evidence. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

Plaintiff contends that the ALJ's evaluations of these opinions was erroneous because the ALJ failed to comply with SSR 82-59, and Dr. Aldous was in a better position to evaluate Plaintiff's condition since Dr. Aldous had examined Plaintiff at regular visits over a substantial period of time. Plaintiff points out that Dr. Aldous's opinion is the most recent in time, more than two years after Dr. Dao and Dr. Gleason's opinions, and more than eighteen months after Dr. Spinka's opinion. None of the consulting or examining physicians reviewed or considered Plaintiff's medical records from 2014 or 2015.

Based on record cites not referenced in the ALJ's decision, the Commissioner argues that the ALJ properly assigned little weight to Dr. Aldous's opinion. According to the Commissioner, these records indicate normal musculoskeletal examinations, normal

---

[9] The ALJ failed to address a medical opinion from treating physician Dr. Miguel Casillas dated April 29, 2013. AR 279. Dr. Casillas's opinion is more restrictive than the opinions of the state agency consultants, but slightly less restrictive than Dr. Aldous's opinion. Dr. Casilla opined that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand or walk two to four hours per day, sit less than six hours, and would need to alternate between sitting and standing every 30-60 minutes.

examinations of extremities, findings of normal strength and gait, and reports of no pain while walking and sitting. The Commissioner also points to portions of the record that support a finding of noncompliance with prescribed treatment. The Court, however, may only review reasons the ALJ actually put forth to support his decision. *See Stout v. Comm'r, Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th Cir. 2006) (reconfirming that the district court is constrained to review the specific reasons the ALJ actually asserted and cannot affirm a denial of benefits based on a ground the agency did not actually invoke); *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision").

Even if the Court could consider the additional cites that the Commissioner advances, they would not support the ALJ's treatment of Dr. Aldous's opinion. The Commissioner points to portions of the record that do show normal musculoskeletal examinations, normal examinations of Plaintiff's extremities, and findings of normal strength and gait. ECF No. 15-1, at 12. But Dr. Aldous's medical opinion relies on her findings that Plaintiff experienced severe and constant pain in his feet that became worse with walking. AR 772. Dr. Aldous also relies on findings of fatigue, irritability/depression, frequent fungal infections, and nausea. The record supports these findings. AR 519-20, 601-08, 617, 619, 647-52, 654-658, 681-82, 687-88, 711-712, 722-23, 727-728, 736, 746, 785, 789, 791-92, 807, 813-15, 841. The "normal" findings relied on by the Commissioner are unrelated to these issues and do not contradict Dr. Aldous's opinion regarding how Plaintiff's pain impacted his ability to work. The Commissioner's statement that Plaintiff "reported no pain while walking and sitting," ECF No. 15-1, at 12, is from an isolated treatment note and ignores the balance of the record, which demonstrates ongoing treatment for pain. AR 519, 638, 647, 651-52, 654, 681, 687, 711, 722, 727, 736, 783, 792, 810, 838.

The Court agrees with Plaintiff that the ALJ failed to meet his burden to articulate specific and legitimate reasons to support his rejection of Dr. Aldous's opinion. The ALJ's

analysis is not legally sufficient because both of the reasons given for rejecting the opinion rely on the ALJ's conclusion that Plaintiff failed to comply with his prescribed treatment. As explained in detail above, however, the ALJ reached this conclusion by ignoring the procedural requirements of SSR 82-59 and 20 C.F.R. § 404.1530, which compels a conclusion that the ALJ's stated reasons for rejecting the opinion are not legitimate. It would be fundamentally unfair to allow the ALJ to ignore a treating physician's opinion based on a conclusion that the ALJ reached in breach of the Social Security Administration's regulations. Moreover, as discussed above, the ALJ's conclusion that Plaintiff failed to follow his prescribed treatment, without any analysis of whether such noncompliance was justified, constitutes reversible error on its own.

### 2. Dr. Arsenault

Dr. Arsenault began providing psychological treatment to Plaintiff in April 2013 and continued treating him on a regular basis through 2015. AR 536, 778. Dr. Arsenault completed a Mental Impairment Questionnaire regarding Plaintiff on November 15, 2015. Dr. Arsenault assessed a GAF score of 41 and opined that Plaintiff's impairments would cause him to be absent from work for more than four days per month. AR 778-79.

The ALJ assigned "very little weight" to Dr. Arsenault's opinion. The ALJ gave two reasons for doing so: 1) Dr. Arsenault indicated that Plaintiff has "struggled" with his medication regimen, and the ALJ found that Plaintiff was "willfully noncompliant with his prescribed medication for his allegedly disabling impairments;" and 2) "mental status examinations have been unremarkable other than anxious, irritable, depressed." AR 38.

There are two other medical opinions in the record related to Dr. Arsenault's opinion. Dr. P. Solomon, a state agency psychiatric consultant, provided an RFC assessment on October 28, 2013, finding that Plaintiff had moderate limitations in understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; and getting along with coworkers or peers. AR 112-14. Dr. D. Funkenstein, a

state agency psychiatric consultant, provided an RFC assessment on February 3, 2014, that was identical to Dr. Solomon's prior opinion. AR 142-44.

The ALJ did not reference Dr. Solomon or Dr. Funkenstein's opinions as a reason for giving "very little weight" to Dr. Arsenault's opinion. Nonetheless, the Court will evaluate them as controverting opinions and review whether the ALJ provided specific, legitimate reasons supported by substantial evidence in rejecting Dr. Arsenault's opinion.

Plaintiff argues that the ALJ's treatment of Dr. Arsenault's opinion was in error because the ALJ's finding that Plaintiff struggled with his medication regimen and that his mental status examinations were unremarkable are not supported by evidence in the record. Plaintiff also contends that the ALJ should not have given greater weight to the state agency psychiatric consultants because their opinions were based on incomplete medical records. Neither of the consulting physicians reviewed an opinion by Dr. Marie Court, who examined Plaintiff in October 2013, and diagnosed Plaintiff with schizoaffective disorder. AR 502-508.

The Commissioner contends that there was no error because Dr. Arsenault's "extreme opinion" is contradicted by "the many normal objective findings in the record." ECF No. 14-1, at 14. The Commissioner also argues that the ALJ correctly discounted Dr. Arsenault's opinion because of Plaintiff's noncompliance with prescribed treatment. *Id.* The Commissioner does not address Plaintiff's arguments regarding the incomplete record relied on by the state agency psychiatric consultants, or the ALJ's failure to consider Dr. Court's diagnosis of schizoaffective disorder.

The Court agrees with Plaintiff that the ALJ committed legal error. As discussed above, the ALJ cannot rely on Plaintiff's purported noncompliance with his prescribed treatment as a specific and legitimate reason to reject Dr. Arsenault's opinion, when the ALJ's finding in that regard was in violation of Social Security Administration regulations. Moreover, there is no evidence in the record that Plaintiff was prescribed any medications specific to his mental impairments. Dr. Arsenault's opinion clearly states that he did not recommend psychiatric medications for Plaintiff at the time of his opinion because he "has

struggled with current medication regimen. He is often overwhelmed by medical concerns and corresponding symptoms." AR 778. The ALJ provides no explanation for why any purported failure to follow prescribed treatment for diabetes, hepatitis, or HIV would be relevant to the limitations caused by Plaintiff's mental impairments.

The ALJ's statement that Plaintiff's "mental status examinations have been unremarkable other than anxious, irritable, depressed" also cannot be a legitimate reason for rejecting Dr. Arsenault's opinion because it is a complete mischaracterization of the record. Dr. Arsenault documented several serious issues with Plaintiff's mental status in the treatment notes. These issues include poor concentration (AR 536, 578, 758), perseveration (AR 500, 509, 515, 536), and suicidal ideation (AR 385, 388, 493, 500, 509, 512, 515, 536, 540, 573, 578, 758). Plaintiff's GAF score was never higher than 50 in the two years that Dr. Arsenault treated him. AR 578. Indeed, in support of this statement, the ALJ cites to 21 different pages in the record of Plaintiff's treatment notes: "Exhibits 16F/2, 1F/8, 11, 14, 24; 4F/8-9, 12-13, 19-20, 25, 28, 31, 34; 5F/3, 7, 10; 6F/24, 30, 37." AR 38. The Court has reviewed all of these citations and found the following issues documented in each:

- Anhedonia or pervasive loss of interest in almost all activities, decreased energy, thoughts of suicide, blunt, flat or inappropriate affect, impairment in impulse control, generalized persistent anxiety, intense and unstable interpersonal relationships and impulsive and damaging behavior, emotional lability, and flight of ideas. AR 778 (Ex. 16F/2)

- Eating problems, sleeping problems, pressured and monotone speech, flat and constricted affect, anxious, irritable and depressed mood, endorsement of suicidal ideation, and current GAF of 50. AR 383 (Ex. 1F/8)

- Eating problems, sleeping problems, pressured and excessive speech, flat and constricted affect, anxious, irritable and depressed mood, expression of suicidal ideation in thoughts, and current GAF of 50. AR 386 (Ex. 1F/11)

- Eating problems, sleeping problems, pressured, loud, and excessive speech, flat and constricted affect, anxious, irritable and depressed mood, expression of suicidal ideation in thoughts, and current GAF of 45. AR 389 (Ex. 1F/14)

- Eating problems, sleeping problems, pressured and loud speech, flat and constricted affect, anxious, irritable and depressed mood, expression of suicidal ideation in thoughts, and current GAF of 45. AR 399 (Ex. 1F/24)

- Eating problems, sleeping problems, pressured, loud, and excessive speech, flat and constricted affect, labile, anxious, irritable and depressed mood, thought processes show perseveration, thought content reveals somatic preoccupations, expression of suicidal ideation in thoughts, and current GAF of 50. AR 490-91 (Ex. 4F/8-9)

- Eating problems, sleeping problems, pressured, excessive, and monotone speech, flat and constricted affect, anxious, irritable and depressed mood, poor insight, thought processes showing flight of ideas, expression of suicidal ideation in thoughts, and current GAF of 50. AR 494-95 (Ex. 4F/12-13)

- Eating problems, sleeping problems, pressured, loud, and excessive speech, flat and constricted affect, anxious, irritable and depressed mood, poor insight, thought processes show perseveration, thought content reveals paranoia, expression of suicidal ideation in thoughts, and current GAF of 50. AR 501-02 (Ex. 4F/19-20)

- Depressed mood, difficulty initiating sleep, difficulty concentrating, feelings of guilt, sleeping problems. AR 507 (Ex. 4F/25)

- Eating problems, sleeping problems, flat, labile, and constricted affect, anxious, irritable, and depressed mood, thought processes show perseveration, expression of suicidal ideation in thoughts. AR 510 (Ex. 4F/28)

- Eating problems, sleeping problems, pressured and excessive speech, constricted affect, labile, anxious, irritable, and depressed mood, expression of suicidal ideation in thoughts. AR 513 (Ex. 4F/31)

- Discussion of anger problems and how his anger interferes with relationships, eating problems, sleeping problems, pressured and excessive speech, labile and constricted affect, labile, anxious, irritable, and depressed mood, thought processes show perseveration, expression of suicidal ideation in thoughts. AR 516 (Ex. 4F/34)

- Sleeping problems, loud speech, constricted affect, labile, anxious, irritable and depressed mood, poor concentration, cooperative and hopeless attitude, thought processes show perseveration, expression of suicidal ideation in thoughts. AR 537 (Ex. 5F/3)

- Difficulty managing anger and irritability, eating problems, sleeping problems, agitated behavior, pressured and loud speech, constricted affect, labile, irritable and depressed mood, poor insight, expression of suicidal ideation in thoughts, current GAF of 45. AR 541 (Ex. 5F/7)

- Depressed mood and anxiety, eating problems, sleeping problems, pressured and monotone speech, flat and constricted affect, anxious, irritable and depressed mood, thought processes show perseveration, expression of suicidal ideation in thoughts. AR 544 (Ex. 5F/10)

- Suicidal ideation, anxious, mistrustful, and demanding attitude toward examiner, depressed, anxious and irritable mood, constricted affect, overproductive speech, tangential thought process with flight of ideas. AR 582 (Ex. 6F/24)

- Suicidal ideation, depressed, anxious, and irritable mood, constricted and flat affect, overproductive speech, tangential thought process with flight of ideas. AR 588 (Ex. 6F/30)

- Difficulty initiating and maintaining sleep, difficulty concentrating, feeling down, depressed, or hopeless, little interest or pleasure in doing things, racing thoughts, suicidal ideation, depressed, anxious, and irritable mood, constricted affect, overproductive speech. AR 595-95. (Ex. 6F/35-37)

3:17-cv-00238-JAH-AHG

In sum, all of the record cites on which the ALJ relied to support his finding that Plaintiff's "mental status examinations have been unremarkable other than anxious, irritable, depressed" in reality establish far more severe and extensive mental health issues than that characterization suggests.

A separate evaluation by Dr. Court, which neither of the consulting psychiatrists had available to them and which the ALJ did not address, diagnoses Plaintiff with schizoaffective disorder. AR 503. Dr. Court's evaluation notes that Plaintiff hears voices and has "constant paranoia." *Id.* Dr. Arsenault's treatment notes corroborate these issues. AR 493 (flight of ideas); AR 496 (paranoia, distorted thinking); AR 500 (paranoia); AR 573 (paranoia, racing thoughts), AR 578 (racing thoughts, flight of ideas, impaired ability to make reasonable decisions). Both Dr. Court's evaluation and these treatment notes support Dr. Arsenault's medical opinion that Plaintiff experiences "thoughts of suicide," "impairment in impulse control," "intense and unstable interpersonal relationship and impulsive and damaging behavior," "emotional lability," "flight of ideas," "mood disturbance," "difficulty thinking or concentrating," and "paranoid thinking or inappropriate suspiciousness." The ALJ's rejection of Dr. Arsenault's opinion is not supported by specific and legitimate reasons and is therefore in error.

Dr. Aldous opined that Plaintiff would be absent from work more than four days per month and off task more than 25% of the time. AR 776. Dr. Arsenault opined that Plaintiff would be absent from work more than four days per month, and that Plaintiff had poor concentration, mood disturbance, paranoid thinking or inappropriate suspiciousness, and easy distractibility, among other issues. AR 779. The RFC found by the ALJ does not incorporate these limitations, so these errors are not harmless.

The ALJ's evaluation of the treating physicians' opinions is a useful illustration of how the ALJ's sidestepping of the requirements of SSR 82-59 fatally infects the entire opinion. That is, while it is clear from the ALJ's rationale that he rejects their opinions because he has concluded that Plaintiff would have an RFC permitting him to engage in SGA if he followed his prescribed treatment, the Court is left in the dark regarding whether

the ALJ agrees that the functional limitations proposed by Dr. Aldous or Dr. Arsenault would be appropriate to include in Plaintiff's RFC ***given Plaintiff's noncompliance***. As explained, under SSR 82-59, before noncompliance with prescribed treatment can form the basis of a non-disability finding, the ALJ must first address whether Plaintiff is currently precluded by his impairments from engaging in SGA. Only then may the ALJ turn to the question of whether Plaintiff's capacity to engage in SGA would be restored by prescribed treatment. 1982 WL 31384, at *1. Yet here, the ALJ skipped ahead to the conclusion that Plaintiff would be able to engage in SGA if he adhered to prescribed treatment, and crafted the RFC determination and weighed the medical opinions based not on Plaintiff's actual functional limitations, but instead based on his would-be limitations if he followed prescribed treatment. From there, the ALJ determined that Dr. Aldous and Dr. Arsenault's opinions should be rejected merely because they did not also incorporate Plaintiff's treatment noncompliance into their opinions. But the fact that Plaintiff's treating physicians' opinions reflected Plaintiff's actual functional limitations rather than such hypothetical ones is not a specific or legitimate reason to reject them.

## V.   <u>REMAND FOR BENEFITS IS THE APPROPRIATE REMEDY</u>

The Court has discretion to either remand for further proceedings before the ALJ, or remand for an award of benefits. *Garrison*, 759 F.3d at 1019. Under the "credit-as-true" rule, a case may be remanded for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020. Each of these factors weighs in favor of a remand for an award of benefits in this case.

The first factor weighs in favor of a remand for benefits. The record has been fully developed with respect to the medical opinions. The record includes Plaintiff's medical

records, medical opinions from state agency physicians, Plaintiff's treating physician, and a consultative examiner. No more is needed to evaluate whether Plaintiff is disabled in light of the ALJ's error.

With respect to the Commissioner's failure to comply with SSR 82-59, remand would be futile at this point. The Commissioner was aware of the failure to comply with SSR 82-59 as early as April 22, 2016, when Plaintiff appealed the ALJ's decision to the Appeals Council. AR 353. Plaintiff submitted a detailed brief outlining the reasons why SSR 82-59 applied and how the ALJ had failed to follow its requirements. AR 354-56. The Commissioner could have chosen at that point to supplement the record and comply with SSR 82-59, but did not do so. Nearly eight years have passed since the ALJ's decision, and it would be impossible to create a record that accurately reflected the facts necessary to an analysis under SSR 82-59 as they existed during the relevant time period. "[A] remand for benefits is indicated particularly where a claimant has already experienced lengthy, burdensome litigation." *Van Ausdle v. Shalala*, 19 F.3d 32 (9th Cir. 1994) (unpublished table opinion); *see also Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990) (explaining that while the court had "discretion to remand so that the Secretary may further develop the record" on certain issues pertinent to the disability determination, it would instead "invoke [its] discretion to order payment of benefits" given the "exceptional facts of this case," including that the plaintiff was currently 64 years old, it had been nearly four years since she had applied for benefits, further delays would be "unduly burdensome," and it was "very doubtful" that the Commissioner would be able to sustain his burden at step five to find the plaintiff not disabled). Similarly, here, to the extent the Commissioner failed to develop the record regarding whether adherence to prescribed treatment would have restored Plaintiff's capacity to work, further administrative proceedings on that question would serve no useful purpose and would only cause undue burden to the Plaintiff. The current record is sufficient in light of the Commissioner's error and resulting delays.

The second factor weighs in favor of a remand for benefits because, as discussed above, the ALJ failed to provide legally sufficient reasons for rejecting the medical

opinions of Dr. Aldous and Dr. Arsenault. The ALJ also failed to provide legally sufficient reasons for relying on a finding of noncompliance with prescribed treatment throughout his decision and ignoring SSR 82-59 in doing so.

The third factor also weighs in favor of a remand for benefits. If Dr. Aldous and Dr. Arsenault's opinions are credited as true, Plaintiff's RFC would be, at the most, light work with additional limitations. *See* 20 C.F.R. § 404.1567(b) (Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."). The vocational expert testified at the hearing that Plaintiff's past work would be precluded if Plaintiff had an RFC for light work with postural and environmental limitations that were less restrictive than Dr. Aldous's and Dr. Arsenault's opinions. AR 91-100. Therefore, Plaintiff would have been deemed unable to perform his past relevant work at step four of the disability evaluation.

Moreover, Dr. Aldous opined that Plaintiff would be off-task 25% or more of the workday. AR 776. Both Dr. Aldous and Dr. Arsenault testified that Plaintiff would be absent more than four days per month. AR 776, 779. The vocational expert testified that no jobs would be available if Plaintiff missed three to four days a month, if Plaintiff's performance was fifteen to twenty percent below average, or if Plaintiff had problems with concentration and focus. AR 100. If Dr. Aldous's and Dr. Arsenault's medical opinions had been credited properly, the ALJ would have been required to find Plaintiff disabled.

Finally, if Dr. Aldous and Dr. Arsenault's opinions were credited as true and the ALJ had properly proceeded to step five of the disability evaluation to determine whether Plaintiff could perform other work in the national economy, a finding of disability would have been mandated under the Medical-Vocational Guidelines, commonly referred to as the grids, at least as of August 6, 2013. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 2. Plaintiff would be considered "advanced age" as of August 6, 2013, when he turned 55 years old. 20 C.F.R. § 404.1563(e). Under the grids, a person of advanced age with an RFC limited to light work who can no longer perform past relevant work, and who has a high school education and a history of unskilled work experience, is automatically considered disabled.

3:17-cv-00238-JAH-AHG

20 C.F.R. Pt. 404, Subpt. P, App. 2, Sec. 202.00(c); *see also id.* at Table No. 2. It is clear from the hearing transcript that the ALJ understood this:

> PLAINTIFF'S COUNSEL: Your honor, my understanding is the grid that he grids out at his age.

> ALJ: Correct. Yes, the only reason I gave light work was because prior to age 55 he could actually do a limited range of light but once he gets to age 55, he has to be able to do his past work, which is kitchen helper and since it is unskilled, there are no skills transfer. So, depending upon what RFC I come up with the only way he will be not disabled at age 55 and beyond is because he can do kitchen helper.

AR 97-98. Although Plaintiff's alleged disability onset date is February 1, 2013 (approximately 6 months prior to his 55th birthday), the fact that a finding of disability would be mandated for him beginning on August 6, 2013 further counsels against remanding for additional administrative proceedings.

Therefore, weighing the applicable factors, the Court finds the appropriate remedy here is to reverse the Commissioner's decision and remand for an immediate award of benefits.

## VI.   **CONCLUSION**

For the foregoing reasons, the Court finds that the ALJ erred in denying Plaintiff social security disability benefits and that his findings were not supported by substantial evidence in the record. Therefore, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order:

(1) adopting this Report and Recommendation;

(2) **GRANTING** Plaintiff's Motion for Summary Judgment (ECF No. 13);

(3) **DENYING** Defendant's Cross-Motion for Summary Judgment (ECF No. 14);

(4) **REVERSING** the Commissioner's determination that Plaintiff is not disabled, and **REMANDING** this action for calculation of benefits to be awarded to Plaintiff.

The Court submits this Report and Recommendation to United States District Judge John A. Houston under 28 U.S.C. § 636(b)(1). **IT IS HEREBY ORDERED** that any party

3:17-cv-00238-JAH-AHG

to this action may file written objections with the Court and serve a copy on all parties no later than **March 13, 2024**. The document should be captioned "Objections to Report and Recommendation."

     **IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties no later than **March 20, 2024**.

     **IT IS SO ORDERED.**

Dated:  February 28, 2024

_____

Honorable Allison H. Goddard
United States Magistrate Judge